THE CHICAGO, BURLINGTON AND QUINCY RAILROAD COMPANY

*v.*

MARY J. BELL, Admx.

*Filed at Ottawa September 27, 1884.*

1. APPEAL—*reviewing facts—and what are considered questions of fact relative to negligence.* In an action to recover for an injury resulting from alleged negligence in the management of a train of cars, the questions presented, whether any notice was given of the dividing of the freight train in a particular manner, or whether any warning was given of a sudden movement of the train, (the immediate cause of the injury,) or whether the party thereby injured or killed was at the time using due care for his safety, or whether he was a fellow servant with others to whom the negligent acts were attributed, are questions of fact not subject to review on the evidence in this court, except so far as they may have a bearing upon the instructions given or refused.

2. ALLEGATIONS AND PROOFS—*as regards the grounds of alleged negligence.* A plaintiff suing a railway company to recover damages growing out of negligence, will be confined in his evidence to the specific acts of negligence alleged in his declaration as the cause of his action. His allegations and proofs must agree, and he can not charge in his declaration, as a ground of action, a specific act of negligence, and succeed on the trial by proving another wrongful act wholly different from that charged.

3. In an action against a railway company to recover damages for the death of the plaintiff's intestate, where the negligence charged in each count of the declaration is, that while the deceased was on one of the cars of a freight train for the purpose of assisting in unloading stone, he was, by a sudden jerk or movement of the train, of which no notice or warning was given by those having it in charge, thrown down between the cars, and run over and killed, it was *held,* that no recovery could be had on the ground that the foreman, under whom the deceased was employed, recklessly and negligently ordered him to go upon the cars having the stone, before they were detached, and that he obeyed such order.

APPEAL from the Appellate Court for the Second District;— heard in that court on appeal from the Circuit Court of Henderson county; the Hon. ARTHUR A. SMITH, Judge, presiding.

Mr. O. F. PRICE, and Mr. WILLIAM C. NORCROSS, for the appellant:

It was incumbent on the plaintiff to prove, by a preponderance of evidence, that the deceased used ordinary care. *Railroad Co.* v. *Johnson,* 103 Ill. 521; *Railroad Co.* v. *Evans,* 88 id. 63; *Railroad Co.* v. *Harwood,* 90 id. 429; *Allyn* v. *Railroad Co.* 105 Mass. 77; *Railroad Co.* v. *Green,* 81 Ill. 19; *Pennsylvania Co.* v. *Lynch,* 90 id. 334.

It was the duty of the deceased to watch the train, and not get on until it had stopped. *Railroad Co.* v. *Donahue,* 75 Ill. 108; *Railway Co.* v. *Black,* 88 id. 115.

Had he been paying that attention to the business in hand that due care and diligence demanded he should, he would have heeded the directions given by Larson to Smith in regard to dividing and moving up the train, and would have avoided the injury. *Railroad Co.* v. *Elliott,* 28 Ohio St. 340; *Maher* v. *Railroad Co.* 64 Mo. 297.

Even if Larson had told deceased to get on the car then, still the latter would have to exercise reasonable care, which would have forbidden his getting on between the cars. *Railroad Co.* v. *Sykes,* 96 Ill. 171; *Railroad Co.* v. *Dewey,* 26 id. 258.

Deceased was a fellow servant with those in charge of the train. *Railroad Co.* v. *Moranda,* 93 Ill. 316; *Railroad Co.* v. *Cox,* 21 id. 20; *Railroad Co.* v. *Keefe,* 47 id. 108; *Railway Co.* v. *Britz,* 72 id. 108; *Durkin's case,* 76 id. 395; *Voltz' case,* 85 id. 500; *Mining Co.* v. *Kelt,* 42 Mich. 36; *Coon* v. *Railroad Co.* 1 Seld. 492; *Whalen* v. *Railroad Co.* 8 Ohio St. 249; *Greenly* v. *Railroad Co.* 72 Ind. 32.

Messrs. Kirkpatrick & Alexander, and Mr. Raus Cooper, for the appellee:

The deceased had a right to believe that his superior knew better than he did of the situation, and would not order him into a dangerous place. *Railroad Co.* v. *McLallen,* 84 Ill. 109; *Railway Co.* v. *Bayfield,* 37 Mich. 210; *Railway Co.* v. *Jackson,* 55 Ill. 492.

The employer must also provide a suitable place in which the servant, exercising due care, can perform his duty without exposure to damages that do not ordinarily come within the obvious scope of such employment, as usually carried on. *Swoboda* v. *Ward,* 40 Mich. 420; *Coombs* v. *New Bedford Cord Co.* 102 Mass. 572; *Hough* v. *Railway Co.* 100 U. S. 213; *Railway Co.* v. *Taylor,* 69 Ill. 461; *Fairbanks* v. *Haentzche,* 73 Ill. 236; *Railroad Co.* v. *Swett,* 45 Ill. 197.

Mr. Justice Mulkey delivered the opinion of the Court:

This is an appeal by the Chicago, Burlington and Quincy Railroad Company, from a judgment of the Appellate Court for the Second District, affirming a judgment of the Henderson circuit court for $3041.66, which Mary J. Bell, as administratrix of the estate of Alexander Bell, lately recovered

against the company, in an action on the case, for wrongfully and negligently causing the death of the said Alexander Bell.

The facts giving rise to this suit are as follows: On the 22d of March, 1883, and for some time prior thereto, the deceased was in the employ of the appellant as a common laborer, and was usually occupied in doing repairs on the company's road, sometimes at one place, and sometimes at another. On the day just mentioned, Bell, together with some twenty-five others in the company's service, were engaged in riprapping a high embankment at bridge No. 52, on the line of the company's road. This force or gang of men was under the immediate control and directions of James Larson, as boss or foreman. The stone used in riprapping this embankment was brought in open cars from a neighboring quarry, connected by a switch with the company's road, near Gladstone, a station some three miles west of where Larson's force was at work. The train which brought the stone was in charge of one Smith as conductor, and Loosley as engineer, who were no part of Larson's force. Neither Larson nor any of those under him had anything to do with the running or management of the train. They were not carried upon it either in going to or coming from their work, nor did they have anything to do with either the quarrying or loading the stone. In fact, the only connection they had with the train, or with those having charge of it, was to unload it after its arrival at the bridge. This was a part of their duty. Between 11 and 12 o'clock of the 22d of March, 1883, this train, consisting of nine or ten open cars loaded with stone, coming from the west, passed the place where Larson and his men were at work, and continued in that direction until out of sight. After reaching Biggsville, a short distance east of the bridge, the engine was reversed and the train pushed back to the bridge. On approaching there, the train moved slowly backwards till the two rear cars had cleared the west end of the bridge, where they were directed to be detached.

The deceased, together with others of Larson's force, was at this time east of the bridge and on the south side of the embankment. About the time the train stopped, and probably before it had entirely ceased moving, Larson ordered his men to board the cars,—four men to the car,—and unload the stone, which they proceeded to do. There is but one witness who claims to have observed Bell's movements from the time this order was given up to the time of his death. This witness states that when the order was given the deceased was about one-third of the way up the grade with a wheelbarrow loaded with stone; that instead of boarding the train at once when ordered, he took the wheelbarrow down to where the men were riprapping, and unloaded it; that he then went up the embankment to the train, the two cars west of the bridge having in the meantime been cut off, and had barely got aboard, when, by a sudden jerk or movement of the train east, he lost his balance, and fell or was thrown between two of the cars, the one west of him passing over his body and causing his instant death.

Whether any notice was given of the dividing of the train in the manner stated, or whether any warning was given of the sudden movement of the train east, which was the immediate cause of Bell's death, or whether he was using due care himself at the time in question, are controverted questions of fact, with which we have no concern, except so far as they may have a bearing upon the court's instructions to the jury. It is manifest, from the record, these questions were the frictional points upon which the case turned before the jury, and their finding upon them having received the sanction of the Appellate Court, it is of course final and conclusive upon this court. The case is submitted here upon the Appellate Court briefs alone, which are chiefly occupied with the discussion of the weight of evidence upon the controverted questions of fact just adverted to. This was very pertinent and altogether proper in that court, but for obvious reasons it is otherwise here.

So far as the instructions of the court are concerned, we find no substantial grounds for complaint. The few objections urged against them are quite technical, and are not of sufficient importance to demand discussion at our hands. As a whole, we think they fairly presented the law of the case to the jury, and this was sufficient. On the other hand, we think several of the positions taken by appellee are unsound. For instance, it is earnestly urged that it was gross negligence to order the deceased to board the cars before the train had fully stopped moving, and it is insisted that in this respect it is governed by the *May case*. There is more than one good answer to this position. Assuming it was a proper question for the consideration of the courts below, it was clearly one of controverted fact, that was finally settled by the affirmance of the judgment in the Appellate Court, and we therefore have nothing to do with it. But another conclusive answer is, that this alleged wrongful order of Larson is not set forth as a cause of action in either of the four counts of the declaration, and it is hardly necessary to add, it can not, for that reason, be availed of here or elsewhere. The allegations and proofs must agree. One can not charge in his declaration, as a ground of action, a specific act of negligence, and then succeed on the trial by proving an act wholly different from the one charged. The negligence charged in each count of the declaration in this case is, that while the deceased was on one of the cars for the purpose of assisting in unloading the stone, he was, by a sudden jerk or movement of the train, of which no notice or warning was given by those having it in charge, thrown between the cars and killed. Conceding, then, Larson did give a rash and negligent order to the deceased, and that it was obeyed by him, as is claimed by appellee, still that fact would not be any evidence of the negligence charged in the declaration, and consequently could afford no ground of recovery under the declaration, as framed. It is clear, therefore, the principle on which the *May case*

was decided has no application here. When we look at the declaration, it is evident this case is confined within very narrow limits. Did Bell lose his life by the train starting suddenly and without warning? The trial and Appellate courts have both said he did, and we are not permitted to interpose upon this question.

What is here said is equally applicable to the claim that those having charge of the train were fellow servants of the deceased, and that there can be no recovery on that ground. The question thus presented is one of fact, which depended upon a variety of circumstances that were put in evidence before the jury, and they having passed upon it, we are not, as already stated, permitted to review their finding. So far as the trial court made any ruling upon this subject, by instructions or otherwise, that may be reviewed here, but that is all. This is expressly held in *Indianapolis and St. Louis Railroad Co.* v. *Morgenstern*, 106 Ill. 216, and perhaps we can not do better than to conclude our observations on this question by repeating what was there said. After citing several authorities to show that while it is the province of law to define or determine what negligence is, yet, whether negligence exists in a particular case is one of fact, the court then proceeds: "What has been said in relation to the question of negligence may also be said in regard to fellow servants. The definition of fellow servants may be a question of law, but it is always a question of fact, to be determined from the evidence whether a given case falls within the definition. Whether the deceased and Bray were fellow servants depended upon a variety of facts, which had to be proven before the jury. The inquiry would arise whether they were in the service of a common master; were they engaged in the same line of employment; were the existing relations between them of such a character and their duties such as to bring them often together, coöperating in a particular work. These, and perhaps other facts of a kindred character, were matters to

be proven before the jury, and from the facts thus proven it was for the jury then to say whether the two servants, in the discharge of their duties, were fellow servants. Had appellant desired to raise the question for decision in this court, whether, under the evidence, the deceased and Bray were fellow servants, it might have done so by an appropriate instruction; but under the statute we can not review the evidence, and from it determine the question."

All that we have cited from that case is equally applicable to this case, and is conclusive of the question in hand. The law, as laid down by the court in the present case, relating to this question, is exceedingly favorable to the appellant, and there is clearly no ground to complain on that score.

Perceiving no error in the record, the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*