The Chicago and Alton Railway Company

*v.*

·Thomas Bell.

*Opinion filed April 20, 1904.*

1. APPEALS AND ERRORS—*pleading to merits waives error in over-ruling demurrer.* Pleading to the merits waives the alleged error of the court in overruling a demurrer to the declaration.

2. EVIDENCE—*plaintiff cannot recover on case not stated in declaration.* Plaintiff in a personal injury case cannot allege specific negligence of one kind and recover upon proof of another kind.

3. FELLOW-SERVANTS—*when employees are fellow-servants.* Servants of a railroad company who are engaged in the work of cleaning cinders and ashes from locomotives, and who are directly co-operating in the work in hand, are fellow-servants, regardless of their acquaintance or the length of time they have worked together.

4. SAME—*effect of fellow-servants' disregard of master's rules.* Disregard by fellow-servants of a laborer in a cinder-pit of the safe and proper method of doing the work provided by the master does not render the latter liable for a consequent injury to such laborer.

5. MASTER AND SERVANT—*notice of obvious dangers of employment is not required by law.* It is not the duty of the master to notify or instruct an inexperienced adult servant as to dangers which are open and apparent to any person of average intelligence, without regard to experience in the particular work.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Greene county; the Hon. O. P. THOMPSON, Judge, presiding.

Henry C. Withers, and Henry T. Rainey, (William Brown, of counsel,) for appellant.

D. J. Sullivan, for appellee.

Mr. Justice Cartwright delivered the opinion of the court:

The Appellate Court affirmed a judgment recovered by appellee in the circuit court of Greene county against appellant for damages on account of a personal injury sustained while in its employ.

The defendant demurred to the declaration, and its demurrer being overruled it filed a plea of the general issue. The first point made by counsel is, that the demurrer should have been sustained and that the court erred in overruling it. This alleged error is not contained in the assignment of errors upon the record and could not be considered if it were an error, but the defendant having pleaded to the merits after the demurrer was overruled, error cannot be assigned on the ruling. *Barnes* v. *Brookman,* 107 Ill. 317.

At the close of all the evidence produced at the trial defendant moved the court to exclude the evidence and direct a verdict of not guilty. The motion raised the question whether there was any evidence which, with all proper inferences to be drawn therefrom, fairly and reasonably tended to support the cause of action alleged in the declaration. If there was, the court was right in overruling the motion; but if there was not, the motion should have been sustained.

There were two counts in the declaration, in each of which it was alleged that the plaintiff was employed by the defendant in the capacity of a laborer to work in a certain cinder-pit, and that he was wholly inexperienced in such work and unacquainted with the the perils connected with it. In the first count it was further alleged that it became the duty of the defendant to inform the plaintiff of such dangers as were not obvious to the em-

ployment; that engines were run over the cinder-pit without notice to the employees working therein; that the defendant failed to inform him of the dangers attending the employment and that engines would be so driven over the pit without notice to him, and that he was struck by an engine driven over the pit without notice, and his left hand was run over, necessitating the amputation of three fingers. The second count alleged that it was the duty of the defendant to use reasonable diligence to see that the place where plaintiff was required to work was reasonably safe, and to use reasonable diligence to inform him of perils connected with his duties which were not known to him and not obvious to the employment. The negligence charged in that count was, that the defendant caused one of its engines to be driven over the pit without providing proper notice or signals, or any means by which plaintiff might know that the engine was about to be so driven over the pit.

The testimony of the plaintiff, and all the evidence in the case most favorable to him, tended to prove the following facts: Defendant had a round-house in the city of Roodhouse, where engines coming in from the road were cleaned and prepared to be sent out on another trip. North-east of this round-house was a building equipped with machinery for coaling engines, and between the rails of the track over which the engines were driven to be coaled there was a cinder-pit for cleaning out the cinders and ashes. The pit was variously estimated at from eighty to one hundred feet in length, and it was of the full width between the rails and from three and a half to four feet deep. In the pit there were tubs, which ran upon tracks in the bottom of the pit and into which the ashes and cinders from the engines were raked. When the tubs were full of cinders they were dumped into a hole at one end of the pit, from which they were elevated by machinery into cars and removed. Plaintiff had been a farmer and moved from the farm to Rood-

house and went to work for the defendant. He worked for about ten days oiling journals at the stock yards, and afterward applied for work to the foreman at the round-house, who had charge of coaling and cleaning the engines, and he was employed to work in the cinder-pit. He was inexperienced in that kind of work and knew nothing about it. He came to the cinder-pit the next morning just before seven o'clock, when the night force was still at work. A man was at work in the pit under an engine raking cinders into a tub, and plaintiff told him that he came to take his place but that he knew nothing about the work. The man showed him how to rake out the cinders, and got out of the pit and plaintiff took his place. The method of doing the work was to run an engine over the cinder-pit and to stop it at the right place over one of the tubs. One man would then get on the engine and knock the fire and cinders out into the ash-box of the engine, and he was called the "fire-knocker." The other man would get under the engine in the pit and rake the ashes into a tub. The men would then accompany the engine to the wood pile and put on wood to start the fire and the engine would then be coaled. John Shinnall was the fire-knocker working with the plaintiff. When plaintiff first went to work they finished cleaning the engine that was over the pit and then went with it to the wood pile, and after being coaled it was taken back into the round-house. The engines came to the cinder-pit from the north, and some time afterward two engines came on together. Shinnall opened the switch and let the engines upon the track and then got on the front engine and rode down to the pit. The engine stopped and Shinnall got out where he could see when the engine was directly over a tub, and signaled the engineer where to stop. This was called "spotting" an engine, and plaintiff was told to watch Shinnall spot the engine, as that would be part of his duties. When the first engine was properly placed over the pit, Shin-

nall got up in it and knocked the cinders and fire out and plaintiff went into the pit and raked the ashes. That engine moved on and the other engine was spotted in the same manner, and the fire and cinders were knocked out and raked as in the former case. The two engines then moved on to the wood pile, and Shinnall went with them after directing plaintiff to dump the cinders into the hole and get the tubs ready for the next engine that might come in. Plaintiff pushed the tubs along on their track and dumped them. He then drew one of the tubs along in the pit toward the north, walking backward, or nearly so, with his hands on the tub, drawing it after him. Another engine was then approaching the cinder-pit from the north, backing up, according to the usual custom, and moving very slowly, at about three miles an hour, or an ordinary walk. When plaintiff got to the place where he wished to leave the tub he was drawing, he placed one hand upon the rail and the other on the tub and commenced to raise himself out of the pit, when he was struck in the back by the tender of the engine. He did not look toward the north and testified that there was no obstruction to his view, and that when down in the pit he could see an approaching engine for three hundred feet if he looked. He testified that he did not give any attention to the question whether an engine might be approaching, because he supposed that they would look out for him and not come on the pit until he was ready. His hand was caught between the wheel of the tender and the rail and three fingers were cut off. He was not informed that engines would be run upon the pit without notice to him. One of the men was hanging on the steps of the engine, facing the gangway and watching the track ahead of the engine. When plaintiff started to raise himself out of the pit that man and Shinnall both saw him and both cried out. The man operating the engine stopped it at once, and it did not move over four or five feet.

It is fundamental that a plaintiff must recover, if at all, upon the case stated in his declaration, and that he cannot allege specific negligence of one kind and recover upon proof of negligence of another character. (*Chicago, Burlington and Quincy Railroad Co.* v. *Bell,* 112 Ill. 360; *North Chicago Street Railway Co.* v. *Cotton,* 140 id. 486; *Chicago and Eastern Illinois Railroad Co.* v. *Driscoll,* 176 id. 330.) It is therefore necessary for the plaintiff to prove facts from which the law would raise a duty of the defendant to give him notice that its engines were run upon the cinder-pit, for the purpose of cleaning them, without notice to him, as alleged in the first count, or that the defendant had failed to provide any proper notice or signals that engines were about to be driven over the pit, as alleged in the second count. There was absolutely no evidence tending to prove the charge in the second count that the defendant did not provide proper notice or signals to warn the plaintiff that an engine was about to be moved over the pit. On the contrary, the evidence on that question tended to prove that a perfectly safe and proper method had been adopted. Plaintiff testified that the engines which had come in that morning had stopped before they were moved over the pit, and that they then moved down slowly under the direction of Shinnall, who showed them where to stop, and that he expected if another engine came in it would do the same thing. Plaintiff's witness Shinnall testified that the custom was to give signals, and that the engine would just stop and stand and come over the pit in accordance with his signals. The method adopted by the defendant, which the evidence tended to prove, was for the engine to come up and stop and then move over the tubs, while the fire-knocker or cleaner stood at one side and spotted the engine, or showed precisely where it was to stop over the tub. There was no fault in the defendant in that respect, but the evidence tended to show that in this instance the method was disregarded. If so, it was disregarded

by fellow-servants of the plaintiff, for whose negligence the defendant was not liable. If the men in charge of the engine at the time of the accident were negligent or failed to give proper and reasonable notice to the plaintiff, their negligence was that of servants in the same department with the plaintiff, engaged in the same line of employment and directly co-operating with him in the work in hand. They were therefore fellow-servants, and the relation did not depend upon the accident of acquaintance or the length of time they had worked together. (*World's Columbian Exposition* v. *Lehigh*, 196 Ill. 612.) As to any such negligence, if any there was, the declaration did not state nor the evidence tend to prove any cause of action. It is true, if the injury resulted from the combined negligence of fellow-servants and of the defendant the plaintiff might still recover. (*Chicago and Northwestern Railway Co.* v. *Gillison*, 173 Ill. 264.) But if it is a fact that the method of doing the work adopted by the defendant was a proper and safe one and provided for proper signals and notice, the charge in the first count also failed, and there could be no duty of the defendant to inform the plaintiff that engines would be run over the pit without notice.

Ordinarily, one engaging in any employment assumes the ordinary risks and hazards of the business in the manner in which it is conducted, and there is no duty of the master to warn and instruct him as to dangers which are patent to persons of ordinary intelligence. One who attempts to do work which exposes him to obvious and known dangers assumes the risk. (*Indianapolis, Bloomington and Western Railroad Co.* v. *Flanigan*, 77 Ill. 365.) When there are special risks which are not obvious or patent and of which the servant is not cognizant, it is the duty of the master to notify him of such risks. (*United States Rolling Stock Co.* v. *Wilder*, 116 Ill. 100.) If the servant is ignorant and inexperienced, it is a duty to warn him of dangers not obvious to one without experience,

but there is no duty to notify or instruct him as to dangers which are open and apparent to every person.    In this case the plaintiff was an adult, capable of understanding and appreciating ordinary dangers, so that the rule as to infants or those who are incompetent to fully understand and appreciate dangers cannot be invoked in his behalf.    The work was performed in the daytime; there was no obstruction whatever to view; the track extended in a straight line as much as three hundred feet from the cinder-pit in the direction from which the engines came, and they were moved very slowly to and over the pit.    Plaintiff could not have been ignorant of the fact that he would be injured by an engine running over the pit while trying to climb out as he did, and as such a danger was perfectly open and obvious, it was not the duty of the defendant to instruct him that such a thing was dangerous.    He was employed in the open cinder-pit and necessarily knew that engines would be run over it.    If it could be said that there was any evidence tending to prove a habit or custom of running engines over the pit without notice, there can be no question that the danger arising therefrom was patent and obvious to any person of ordinary intelligence.

The evidence did not tend to prove the negligence charged in the declaration, and the motion to exclude it and direct a verdict should have been sustained.

In the abstract furnished by the appellant the rules of this court are violated by failure to condense the evidence in narrative form.    Most of it is printed at length by questions and answers where there was no objection or exception to any question or answer requiring it to be so printed.    The clerk, in taxing the costs, will not include any cost of the abstract.

The judgments of the Appellate Court and the circuit court are reversed and the cause is remanded to the circuit court.                    *Reversed and remanded.*