DETERMINED IN THE

# FIRST DISTRICT

OF THE

# APPELLATE COURTS OF ILLINOIS

## DURING THE YEAR 1906.

### Latrobe Steel & Coupler Company v. Matthew Regan.

#### Gen. No. 12,716.

1. ASSUMED RISK—*doctrine of, defined.* Ordinarily, this rule is. that one engaged in an employment assumes its ordinary risks and hazards and there is no duty of the master to warn and instruct him as to dangers which are patent to persons of ordinary intelligence. One who attempts to do work which exposes him to obvious and known dangers assumes the risk.

2. CONTRIBUTORY NEGLIGENCE—*when servant upon roof of building guilty of.* A prudent man who works upon a roof in an apparently dangerous condition, knowing such condition, cannot claim to have exercised due care for his own safety when he has trusted himself on a loosely laid sheet of iron without first ascertaining whether it rested upon a support which would sustain his weight.

BAKER, J., dissenting.

Action on the case for personal injuries. Appeal from the Circuit Court of Cook county; the Hon. CHARLES M. WALKER, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1905. Reversed, with finding of facts. Opinion filed December 11, 1906. Rehearing denied December 28, 1906.

HERRICK, ALLEN, BOYESEN & MARTIN, for appellant.

EDWARD MAHER and ROBERT F. KOLB, for appellee.

MR. PRESIDING JUSTICE FREEMAN delivered the opinion of the court.

This is an action in which appellee recovered a judgment of $1,500 for personal injuries.

(440)

He was employed as a laborer by appellant who was at the time having constructed an open-hearth brick and iron furnace, across the top of which were laid loose sheets of corrugated iron for the purpose of affording temporary shelter from the weather for the workmen employed within its enclosure.

These sheets rested on two by four scantling and had been there some two months at the time of the accident. Appellee received the injuries complained of by falling about twelve feet through this temporary roof. His story is that it was wet weather and he was ordered up to adjust one of the sheets which had become displaced about an inch, causing the roof to leak. The temporary roof covered, it is said, a space described as about fourteen by sixteen feet. Appellee says that when he got upon it he found he could not move the displaced sheet of iron back over the hole by the use of his fingers, and he called for an iron bar. One was thrown up to him, but it rolled off the roof, and before it could be thrown up again, he tried to shove the sheet into place with his hands. While so doing he stepped on another of the loose sheets, which tipped up, and he fell down through the opening thus made. The parties agree that there is no material controversy as to the facts, except that there is a dispute whether appellee voluntarily offered to go up to close the leak or was ordered to do so by the foreman.

It is contended that the evidence fails to sustain the verdict and judgment, that it does not tend to show the accident to have been caused by any negligence on the part of appellant, nor that appellee exercised proper care for his own safety; and it is urged that whatever risk was incident to the work was open and apparent and was assumed by appellee.

We find no evidence of negligence on the part of appellant in the character of the structure itself. It seems to have answered its purpose of keeping the rain and snow from the workmen below. It was not intended as a safe place upon which men were expected

to work, and no question as to the duty of appellant to furnish appellee a reasonably safe place in which to do his work, which seems to have been submitted to the jury by the plaintiff's third instruction, is involved in the case. The temporary character and loose construction of the shelter were, as the evidence tends to show, apparent to ordinary observation of those looking up at it from below. We find nothing in the evidence that warrants acceptance of the statement in appellee's brief that the latter "knew nothing of the construction of the roof." He had been working under it four or five days. He says he supposes the corrugated sheets "rested on something. I couldn't say." If he was ignorant of the construction it was not, so far as we can discover from the record, owing to any negligence of appellant. We find no evidence of appellant's alleged negligence in sending appellee up to replace the displaced sheet. If, as appellee seems to imply, he went up on this temporary covering without even observing whether the loose sheets of which he could not fail to know it was composed if he looked at it, rested on anything or not, there was obviously a want of due and ordinary care on his part. At least he should have discovered the character of the construction when he had climbed up to it. His attention had been called to the leak which he says he was directed to remedy. He knew that the sheet to be replaced in position had been moved by some cause, its own weight or by the wind. If one plate was loose in that way it was evident that others might be. The evidently temporary character of the structure could not fail to suggest to an ordinary careful man the necessity of caution when upon it, but its condition under the circumstances, as in Richardson v. Anglo-Am. Prov. Co., 72 Ill. App. 77-79, violated no duty imposed by law upon appellant.

It is not apparent from the evidence what care appellee, when he fell, was exercising for his own safety. He stepped on an unsupported end of one of the loosely

laid sheets of iron, without apparently testing it or any other of the sheets to see whether they were in position to bear his weight. The temporary covering had held him safely until then. That there should be such unsupported ends was incident to the method in which the shelter was constructed. Its obvious purpose was to keep off the rain or snow while the work on the furnace under it was in progress. It was not intended to be safe for any other purpose.

Appellant urges that appellee assumed whatever risk was incident to putting back the displaced sheet into position. The rule is that ordinarily one engaging in any employment assumes its ordinary risks and hazards and there is no duty of the master to warn and instruct him as to dangers which are patent to persons of ordinary intelligence. One who attempts to do work which exposes him to obvious and known dangers assumes the risk. C. & A. Ry. Co. v. Bell, 209 Ill. 25-31. It does not appear that appellee was ignorant or inexperienced. He was so far as appears, capable of understanding and appreciating ordinary dangers. The danger by reason of which he suffered his fall was open and obvious. A prudent man on such a roof knowing its character cannot claim to have exercised due care for his own safety when he trusted himself on a loosely laid sheet of iron without first ascertaining whether it rested upon a support which would sustain his weight. In Montgomery Coal Co. v. Barringer, 218 Ill. 327-335, it is said after a review of cases bearing upon the question: "The theory upon which those cases proceed is that when the servant has full and complete knowledge of the condition of the implement which he is using or the place in which he is doing work, and no special knowledge is required on his part to apprise him of the danger which he incurs while using such implements or working in such place, he will be presumed to have assumed the risk of being injured from the use of such implement or while working in such place, and that in case of injury

the master by reason of such assumption of risk is not liable.'' The alleged order of the foreman to appellee directing him to climb up on the temporary shelter and readjust one of the loose sheets composing it, so as to close a leak, did not include a direction that he should do the work in any specific way. Both parties, the foreman and appellee, knew or in the exercise of ordinary care should have known the risk involved in moving without great care over loose sheets like these laid temporarily on scantling. That the work could be done in safety with ordinary care is obvious from the evidence.. Appellee moved about on the roof in safety until he tried a second time to adjust the displaced sheet with his bare hands without waiting for the iron bar which he had called for. It was while so doing that he stepped on the loose unsupported end of the plate with which he fell. This was, we think, a risk which he assumed, having knowledge of the conditions. With all the sheets composing the shelter laid loosely on scantling, the danger that some of them might not be supported firmly and be liable to be displaced by one moving about over them was, we think, so obvious and apparent that appellee must be deemed to have assumed the risk. Christiansen v. Graver Tank Works, 223 Ill. 142-148.

This conclusion makes it unnecessary to consider other points presented in the briefs. Fortunately appellee's injuries were not so serious or durable as they might have been had he fallen a greater distance. For the reasons indicated the judgment of the Circuit Court will be reversed with a finding of facts.

<em>Reversed with finding of facts.</em>

Mr. Justice BAKER dissenting.