**H. R. Heimberger, Administrator of the Estate of Kola Phillips, deceased, Appellee, v. St. Louis, Iron Mountain & Southern Railway Company, Appellant.**

1. MASTER AND SERVANT—*fellow-servant doctrine defined.* The servants of a common master are to be regarded as fellow-servants when they are co-operating at the time of an injury in the particular business in hand or when their usual duties are of a nature to bring them into habitual association or into such relations that they can exercise an influence upon each other promotive of proper caution.

2. MASTER AND SERVANT—*who fellow-servants as matter of law.* *Held,* that servants who were in common members of a crew whose duty it was to clean, coal and water engines were fellow-servants, as a matter of law.

Action in case for death caused by alleged wrongful act. Appeal from the City Court of East St. Louis; the Hon. W. J. N. MOYERS, Judge, presiding. Heard in this court at the August term, 1907. Reversed. Opinion filed March 18, 1908.

FORMAN & WHITNEL, for appellant.

MILLARD & SMITH, for appellee.

MR. JUSTICE MYERS delivered the opinion of the court.

Appellee's intestate, Kola Phillip, was in the employ of appellant as a fire-knocker in the company's yards at Bixby, Illinois. He was one of a night shift or crew consisting of three fire-knockers and one hostler. The fire-knockers and hostler worked together in cleaning, coaling and watering engines as they came into the yards, under the direction of the night foreman of the roundhouse. Throughout the entire operation in doing the work required of the night crew the hostler's place was in the cab of the engine, which he moved from place to place, stopped and started only on signal from the fire-knockers engaged with him in the work to be done. In usual routine, the engine would first be run in and stopped above the

cinder-pit, when the fire-knockers cleaned it of fire and cinders. The engine would then be moved to the water tank, where the fire-knockers let in the water, and then to the coal tipple, where they lowered the chute and coaled the engine. In the night time the signals were made with lanterns carried by the fire-knockers. On the night of October 14, 1905, when Kola Phillip was killed, the crew consisted of himself, Mike George and Steve Ryan, fire-knockers, and Harry Douglas, the engineer or hostler. They were engaged in the work of cleaning, coaling and watering an engine in the usual and customary manner of operation. Douglas was on the engine and the others of the crew, having cleaned it of fire and cinders at the cinder-pit, gave signal to move the engine to the coal tipple. When the engine reached the tipple, it stopped on signal of the fire-knocker at chute No. 8. The deceased and one other fire-knocker, being on the tender, let down the apron of the chute and let in the coal, Phillip taking position between the apron and the engine cab. While there, and before the apron was raised to position, one of the fire-knockers signaled the hostler, the engine moved back and Phillip was caught and crushed between the cab and apron, sustaining injuries from which he died.

The declaration consists of two counts, in which it is alleged that the defendant negligently moved an engine about which Kola Phillip, plaintiff's intestate, was at work under circumstances found in the preceding statement, and caused his injury and death. The general issue was filed by the defendant and the case was tried by a jury, which returned a verdict for plaintiff for $1,999. The defendant made a motion for a new trial, which was overruled, and the court rendered judgment on the verdict, from which an appeal was perfected.

In the view we take of this record, it will not be necessary to consider other error than that found in the ninth assignment, viz., that the court erred

in refusing the peremptory instruction to find for the defendant. Clearly and indisputably the hostler and fire-knockers with whom the deceased was engaged at the time of the injury were fellow-servants within the most restricted definition to be found in the opinions of our higher courts. It is the doctrine in this state that servants of a common master are to be regarded as fellow-servants when they are co-operating, at the time of an injury, in the particular business in hand or when their usual duties are of a nature to bring them into habitual association, or into such relations that they can exercise an influence upon each other promotive of proper caution. Chicago City Ry. Co. v. Leach, 208 Ill. 198. In this case, and at the time of the accident, the night foreman of the roundhouse had general supervision of the work in which the deceased was engaged, and the crew with which he worked and of which he was a member acted under the orders and direction of this foreman. It was the duty of the crew to clean and supply with coal and water engines that came into the yard for that purpose. The men were associated and worked together in the performance of the usual, ordinary and customary duty in the work for which they were employed, and to which they had been directed that evening. They received no specific orders as to the manner of doing the work, and required none. There is no dispute in the evidence that the crew was engaged in the usual and customary way, nor is there any evidence that the deceased was acting under direct or specific orders from anyone. The appellee endeavored to prove, and now contends, that Douglas, the engineer, was a foreman, that the crew was under his charge and direction, and that appellant may be held liable for his negligence in causing or permitting the engine to be moved while the deceased was exposed to injury. In the direct examination of witnesses Ryan and George, through an interpreter, these witnesses state that the hostler, Douglas, was in charge

of the engine, but their cross-examination and the manner of operation as detailed by them, wholly discredit their conclusion that Douglas was in charge of the crew, if indeed they intended to convey that meaning and did not intend merely to say that he had charge of the engine, which was true in the sense that he operated it. George, appellee's witness, testified: "When the engine came in he (Estep, the roundhouse foreman) gave directions that it be taken out and cleaned and coaled and watered. Then the hostler and me and Phillip and Ryan would take the engine and go out there on the engine and we cleaned the ash-pan. If in the night time, when we got the ash-pan cleaned we would signal to the hostler with the lantern. When we got up to where the coal chute was and wanted him to stop, would signal with lantern. We could all start and stop the engine with the lantern. The hostler who was on the engine did just as we wanted him to. The three fire-knockers and ash-pan cleaners and hostler worked together and the motion of the engine was controlled by our lanterns. * * * The hostler in the cab would obey the signal. We all worked there together. * * * In the night time we would signal with the lantern to start and stop the engine. This was done on the night in question. Ryan came up from behind and pulled the chute down, the fireman and I were on the engine between the engine and tender and the coal was back of us; the cabman or hostler was on the engine proper. I was on the little platform between the engine and tender getting coal out of the tender into the engine. Anybody would do that work. Sometimes the hostler did that work, the same work us boys were doing. We all four did the same work." To the same purport is the testimony of appellee's witness Ryan. Without regard to appellant's evidence, which is direct and positive as to the duties of the men composing the crew and the manner of operation, we are constrained to hold, as matter of law, that the hostler and fire-knockers were fellow-

servants of the deceased, and whether the injury complained of was due to the negligence of the hostler in managing the engine without signal or to the negligence of one of the fire-knockers in giving a premature signal, it follows, from what has been said, that the appellant was not liable. Ordinarily the question of fellow-servants is one of fact for the jury. This is always the case where there is dispute of evidence as to the facts out of which the relation of fellow-servants arises. As to whether certain facts will create the relation of fellow-servants is a question of law, but whether such facts exist is ordinarily a question of fact for the jury. But, as said by the Supreme Court in the Leach case, *supra,* "where there is no evidence fairly tending to prove that they are not fellow-servants, and the undisputed facts show that the relation exists, the question is one of law." A case very similar in facts to the one at bar and one very much in point in the discussion and application of the fellow-servant doctrine will be found in C. & A. Ry. Co. v. Bell, 209 Ill. 25.

As already observed, other errors were assigned and discussed in argument, but in view of our holding, that the deceased and other members of the crew were fellow-servants, it will be unnecessary to prolong this opinion. The judgment of the City Court will be reversed with finding of facts.

*Reversed.*

We find as facts, to be incorporated with the judgment, that appellant was not guilty of the negligence charged in the declaration, and that the injury to Kola Phillip, appellee's intestate, was due to the negligence of his fellow-servants.