**Fillippo Laudicino, Appellee, v. The Chicago & Alton Railroad Company, Appellant.**

**Gen. No. 17,120.**

1. MASTER AND SERVANT—*when track laborer assumes risk from passing engine.* A railroad laborer cleaning the track was struck by an engine. He was familiar with the constant movement of engines on the track and while there was evidence that the foreman warned the men of approaching trains, it appeared the men were in the habit of looking out for themselves. The evidence was conflicting as to whether a warning was given by the engine, but it was admitted that a whistle was blown when the engine was two hundred and forty feet away, with the view unobstructed, and there was evidence that other blasts were blown in sufficient time for the laborer to get out of the way. He testified, almost unbelievably, that he neither saw nor heard the engine. *Held*, the plaintiff assumed risk.

2. MASTER AND SERVANT—*when track laborer is guilty of contributory negligence.* A railroad laborer cleaning the track was struck by an engine. He was familiar with the constant movements of passing engines and while there was evidence that the foreman warned the men of approaching trains, it appeared the men were in the habit of looking out for themselves. The evidence was conflicting as to whether a warning was given by the

engine, but it was admitted that a whistle was blown when the engine was two hundred and forty feet away, with the view unobstructed, and there was evidence that other blasts were blown in sufficient time for the laborer to get out of the way. He testified, almost unbelievably, that he neither saw nor heard the engine. *Held,* the plaintiff was guilty of contributory negligence in failing to observe ordinary precautions for his safety.

Appeal from the Superior Court of Cook county; the Hon. LOUIS BERNREUTER, Judge, presiding.   Heard in the Branch Appellate Court at the October term, 1910.   Reversed with finding of fact. Opinion filed June 14, 1912.   Rehearing denied June 25, 1912.

WINSTON, PAYNE, STRAWN & SHAW, for appellant; SILAS H. STRAWN, RALPH M. SHAW and JOHN C. SLADE, of counsel.

STEDMAN & SOELKE, for appellee.

MR. PRESIDING JUSTICE BALDWIN delivered the opinion of the court.

This is an appeal from a judgment for $4,540 entered in the Superior Court of Cook county, upon a verdict in favor of appellee, Fillippo Laudicino, for personal injuries sustained by him, through the alleged negligence of appellant, the Chicago & Alton R. R. Co.

The accident occurred October 11, 1907, in appellant's yard at Bloomington, Illinois. Appellee, an Italian then a little over fifty-one years of age, was in good health, and was then and had been continuously in the employ of appellant as a general laborer in and about this yard for two and one-half years immediately preceding the accident.

The yard, with round-house, power-house, turn-tables, shops, and a large number of switch tracks, switches and cross-overs, extended north and were widened out at Locust street, Bloomington, but at the place of the accident,—about half way between Locust and Market streets, the next one south,—there were six parallel north and south tracks, all elevated, the streets named passing beneath them.

The first track on the east was called the "scales" track; the next one west (*2), was the north-bound through main track; the next one (*3), the south-bound through main track; the next one (*4), (the one upon which the accident occurred) was a third main track—a local track extending from the Bloomington railroad station to the yards north. West of these four tracks were two additional side or switch tracks.

All passenger trains coming north changed engines at Bloomington station, about a quarter of a mile south of the place of the accident, and the several engines, after leaving their respective trains, would run north on the third main (*4) track to the round-house. It clearly appeared that a great number of trains and engines daily passed back and forth on all the tracks, including that upon which appellee was injured. It further appeared that it was customary for the laborers to work in gangs, numbering from five to twenty-two men, under the direction of a foreman, grading, repairing, rebuilding, and "cleaning" the tracks,—reloading and transferring cars, or doing any other general work which had to be done in the yard.

On the day in question, appellee was one of a gang of ten to fifteen laborers who were scattered along this fourth track, between Market and Locust streets, short distances apart—all engaged in "cleaning" the track. At about 1:40 P. M., when the "red train," or Alton special, was proceeding north on the north-bound through main track (*2), two tracks east of where appellee was working, engine No. 31, having completed its daily run from Roodhouse to Bloomington, and left its train at the station, came north, as was the everyday custom, on the third main track (*4), at a speed of about six to ten miles per hour, on its way to the round-house, and struck appellee when about midway between Market and Locust streets.

There were at least two other laborers working along the track south of appellee, from which direction

the engine was approaching, but they escaped being injured by the passing engine. Appellee appears to have been standing just outside the track No. 4, on the west side, in a stooping position, facing west; he was not run over, but was apparently struck by the outer part of the front end of the engine and thrown over to one side. The engine was immediately stopped; appellee was found unconscious beside the track, opposite the rear wheel of the tender. His injuries consisted of cuts upon the head and leg, three fractured ribs, and a general bruising, causing his detention in a hospital for about two weeks, after which he came to his home in Chicago. At the close of plaintiff's case, the declaration was amended by leave of court, by striking out certain allegations therein contained. Appellant, thereupon, asked leave to file a general and special demurrer, which was denied, and the pleas already on file were ordered to stand to the declaration as thus amended, to which appellant duly excepted. We are asked to reverse the judgment upon the grounds—1st, that plaintiff assumed the risk of the conditions existing at the time of the accident; 2nd, that plaintiff was guilty of contributory negligence, in that he failed to exercise ordinary care in looking out for the approach of the engine and failed to heed the warnings given; 3rd, that appellant was not shown to be guilty of any negligence; 4th, that the trial court erred in denying leave to file a general and special demurrer to plaintiff's declaration as amended during the trial.

In the view we take of the case, it will not be necessary to consider the last ground suggested, but we will proceed to consider the other three. Upon this record, there can be no dispute that appellee was engaged in a business somewhat hazardous, and requiring exercise of his faculties for his own safety; at the same time, appellant was under obligation to so conduct its business—operate its engines and trains—as to not unnecessarily expose appellee to danger. The

character of the work in which appellee was engaged at the time of the accident ("cleaning" tracks) indicated that his location was transitory, and did not require that close application to, and concentration of the mind upon, the business in hand that would have been required of one engaged in a specific piece of work at one point, which might require close and individual attention. He had been long enough in the service to know that the track upon which he was engaged was frequently used during the day. The train from which engine No. 31 was detached, was on time, and when the engine approached where he was working, on its way to the round-house, it was doing what was done at that hour every day. Appellee himself testified that trains went by on all tracks while they were working; freight and passenger trains, or engines were likely to go by at any time; they would come from either direction; switch engines would move up and down the yard all the time in each direction. Other witnesses, on behalf of appellee, testified to knowing that "engines were likely to come along any minute; that there was one foreman for the gang, but he would not always be standing in one place; if the train was near the first man who saw it would notify us. * * * Of course, all of us would look. * * * We would look, and we would have to work too; we know that we were working and if we did not look out we might get struck. I knew it was a dangerous place; it always was a dangerous place around there. I knew that if I didn't look out for myself, I should be likely to get hurt. * * * We all looked out for the trains and knew that if we didn't look out, we were likely to get hurt. * * * When we would hear the cars coming, we would look up, and when we would see the cars, we moved away."

The track extending to the south of where appellee was injured, for fully a quarter of a mile, was entirely unobstructed, and afforded a clear view of approaching trains for that distance, for the street traf-

Laudicino v. Chicago & Alton R. Co., 171 Ill. App. 396.

fic passed under the tracks, which were elevated. From the testimony, it appeared that during the entire term of appellee's service in the yards, covering about two and one-half years, he was familiar with the constant movement of engines and trains along the tracks; that upon these trains the whistle was sometimes blown and the bell upon the locomotive was sometimes rung, and sometimes neither was done—and the laborers along the track were required to be on the lookout.

It is true, appellee testified, as did some other witnesses in his behalf, that the foreman was in the habit of calling out to the men whenever a train was approaching; but, from the evidence, it is clear that they were in the habit of looking out for themselves and of warning each other. One of appellee's witnesses testified that, "I looked because we had to work, because the work we were doing, we had to watch all the time, north and south, and while we were cleaning tracks, it comes natural. We are looking north and south."

It appears that the jury were instructed that appellee was not entitled to recover on the ground of the failure of the foreman to give warning, even if such warning was not given, and, therefore, the charges of negligence upon which appellee must recover were alleged failure of appellant to ring the bell or to blow the whistle. The testimony bearing upon these alleged acts of negligence is directly conflicting. Including the appellee, there were five witnesses on his behalf, of whom three said that the whistle was not blown, nor the bell rung. Appellee, and his other witnesses, testified that they *did not hear* either the whistle or the bell. On the other hand, five witnesses testified positively for the appellant that the bell rang continuously from the time the engine left the station, a quarter of a mile away. Of this number, three were upon the engine. Seven witnesses testified to having heard the

whistle signal when the engine was at Market street, and ten witnesses testified that the whistle was sharply blown several blasts just prior to the accident. The engineer and the fireman upon engine No. 31, and another engineer who was riding in the cab at the time, testified unqualifiedly that the engine had an automatic bell ringer, which was in operation and ringing the bell continuously from the time it left the station. A colored man, a colaborer with appellee, and working south of him in the gang, testified that he heard the bell as the engine approached, and called to others to get off the track; and another witness in appellant's employ at the time of the accident, testified that she was washing dishes in a car standing on the side track two or three car-lengths south of where the accident occurred, and that, as the engine approached, she heard the bell ringing. As to the blowing of the whistle, Anderson, the engineer upon engine No. 31, testified that, as his engine reached Market street on its way north, he blew four blasts with the whistle as a signal to the switch tender north of Locust street to open the switch to the round-house. This testimony was corroborated by the extra engineer upon the locomotive, the fireman, the engineer of the Alton Limited, then going by on the second track east, the colored laborer working south of appellee, the foreman of the laborers who was considerably north of appellee, and a woman engaged in washing dishes in the car on the side track. As the engine was approaching appellee, he was seen to be in a stooping position near the west rail of the track, and as he made no move to get out of the way, the engineer testified that he blew several short blasts of the whistle in quick succession to warn appellee; and this testimony is corroborated by nine witnesses. The testimony is conflicting as to how far away the engine was from appellee at the time these last warning blasts were blown; but we think a careful analysis of the testimony clearly shows that the distance was

sufficient to enable appellee to have gotten out of danger had he been giving attention.

With commendable frankness appellee concedes in his brief (though the fact was denied by several of his witnesses) that several blasts of the whistle were blown at Market street to notify the switch tender at Locust street. The point at which appellee was injured was only about 240 feet north of Market street—the track was straight, and the view unobstructed. If the whistle was sharply blown several times at this point, and appellee were giving the slightest attention, it seems that he must have heard them. That appellee could have remained in his stooping position, facing west, almost far enough away from the track to be missed by the passing engine, and that the engine could approach, after these sharp blasts of the whistle were concededly blown at Market street, and the bell being automatically rung, with all the noise incident to the approach of the engine upon the tracks, and neither see nor hear its approach, if he was in the exercise of any care or caution for his own safety, seems inconceivable.

Appellee testified that he neither saw nor heard the approaching engine, nor had any warning or indication of its presence; that in point of fact, he did not even know it touched him only from the statements made to him by others after the accident—a story, which, judged by the common experience of man, seems almost unbelievable. In any event, we think the verdict clearly against the weight of the evidence, and that appellee assumed the risks and hazards of the business in which he was employed at the time: see C. & A. Ry. Co. v. Bell, 209 Ill. 25-31; C. & N. W. Ry. Co. v. Donahue, 75 Ill. 106, and in our opinion appellee was clearly guilty of contributory negligence in failing to observe ordinary precautions for his own safety.

It is not denied that appellee was injured, nor is there any point made as to the amount of damages awarded. The accident was most regrettable, but, for

the reasons given, we are compelled to hold that, upon this record, appellee could not recover, and the judgment of the court below must, therefore, be reversed.

*Judgment reversed with findings of fact.*