---

(No. 10925.—Reversed and remanded.)
MATENSZ OZECH, Defendant in Error, *vs.* THE INTERNATIONAL HARVESTER COMPANY OF NEW JERSEY, Plaintiff in Error.

*Opinion filed February 21, 1917.*

NEGLIGENCE—*plaintiff cannot allege specific negligence of one kind and recover upon proof of another kind.* Where a declaration in a personal injury case alleges that the injury was due to an explosion caused by the negligent dumping of hot metal upon water but the plaintiff offers no proof of the effect of molten metal on water, and the evidence tends to show that the injury was due to other negligence, a peremptory instruction should be given, and it is error to so modify an instruction that it authorizes plaintiff to recover in case there was an explosion from any cause, on account of which he suffered injury.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. CLARENCE N. GOODWIN, Judge, presiding.

EDGAR A. BANCROFT, and DAVID A. OREBAUGH, for plaintiff in error.

S. P. DOUTHART, and FRED C. SMITH, (LOUIS H. GEIMAN, of counsel,) for defendant in error.

Mr. JUSTICE COOKE delivered the opinion of the court:

Matensz Ozech, defendant in error, brought suit in the superior court of Cook county against plaintiff in error, the International Harvester Company of New Jersey, to recover for personal injuries resulting from an explosion which occurred in one of the plants of plaintiff in error. The declaration consists of two counts, which are in substance the same, and allege the operation by plaintiff in error of a foundry, in which was a furnace or cupola for the melting of iron, underneath which was a pit or depression which the plaintiff in error negligently permitted to become filled with a large quantity of water; that it was the duty of the plaintiff in error to keep the molten metal in the cupola from running out and falling into the pit filled with water, but that it negligently removed the support from under the molten metal and allowed the same to fall into the water, by means whereof the metal and water exploded and defendant in error was injured. The jury returned a verdict in favor of defendant in error for $1250, upon which judgment was rendered. This judgment was affirmed by the Appellate Court for the First District, and the record is brought here for review by writ of *certiorari.*

At the close of defendant in error's case, and again at the close of all the evidence, motions were made to instruct the jury to find plaintiff in error not guilty. The refusal to give these instructions is one of the errors relied upon for reversal.

The evidence discloses that the foundry of the plaintiff in error was a one-story brick building divided into two rooms by a brick partition. The north room was eighty feet square and was the foundry proper, where the molders worked. The south room was thirty by sixty feet, and in it was located the furnace or cupola about midway east and west and five or six feet south of the partition. The cupola was a cylindrical stack four feet in diameter extend-

ing through the roof. It was supported by four legs about five feet high, which stood upon a concrete foundation slightly greater in diameter than the cupola. There was no floor in either of the rooms. In charging the cupola a layer of sand was first placed in the bottom, then a layer of 1000 or 1500 pounds of coke, then a layer of 1000 pounds of iron, and thus alternating the coke and iron until the furnace was filled up to the charging door at the loading platform. The bottom of the cupola consisted of two semi-circular steel doors hinged at the lower rim, which supported the contents. These doors were supported by two steel props resting upon an iron plate on the concrete foundation. When the props were removed the doors swung down and the mass inside would fall upon the foundation. When the props were in place dry sand was heaped around them under the cupola. When the iron in the cupola is melted it is drawn off at a small tap-hole near the bottom on the north side, and until the metal becomes molten this hole is stopped with fire-clay. When the heat in the cupola is insufficient to melt the iron and it becomes "frozen" by reason of having settled below the burning coke so that it cannot be made hotter, it becomes necessary to dump the furnace and re-charge it. Surrounding the lower portion of the cupola like a collar was the wind-box,—a circular box twenty-four inches high and twelve inches wide, made of one-eighth-inch plate-steel, with holes eighteen inches square on the inside communicating with the interior of the furnace and with smaller holes on the outside. After the firing is started the outer holes in the wind-box are closed and the inner holes are opened and a strong draft is forced through the wind-box into the furnace by means of a large fan. When the draft is turned on the air is forced through the mass in the cupola and escapes with the smoke and gas at the top of the stack. When the fan is turned off the weight and compactness of the mass inside the cupola prevent any circulation of air in the cupola. Be-

277 — 5

fore the furnace is tapped the draft is turned off, the outer holes in the wind-box are opened and the gas in the cupola comes back through the larger holes and fills the wind-box. When the furnace is dumped this gas is likely to be forced out of the box to the outside. Immediately north of the cupola was an arched opening about ten feet wide through which the molders carried the molten iron into the north room. Between this arched opening and the ceiling of the cupola room there was about three feet of partition wall. The cupola room ceiling was about twelve feet high and was used as the second floor or the loading platform from which the furnace was charged. Defendant in error on the day he was injured was engaged in assisting in charging the furnace and was working on the loading platform. On that day, the furnace having been charged and fired, it was found after the usual time for melting the iron had elapsed that the iron was not sufficiently melted. After repeated efforts to get it to flow from the tap-hole it was decided to dump the furnace. The molders and laborers were all ordered out of the building, and the cupola-tender with a long rod knocked out the props and the mass of iron and coke in various stages of combustion dropped down on the sand-covered foundation. A few seconds later there was a violent explosion, which forced the top of the partition northward, drove the air through the partition opening, cracked the east wall and destroyed part of the roof and gable in the north wall of the molding room, which was over eighty feet distant. The explosion did not disturb the contents of the cupola nor the cupola itself nor the wind-box. The mass which was dropped from the cupola remained intact, retaining the cylindrical shape of the cupola. All the evidences of the explosion were at the top of the partition and the upper parts of the north and east walls of the molding room.

The only negligence charged in the declaration is that plaintiff in error permitted water to accumulate around and

under the cupola and dumped the molten mass into it, caus-
ing the explosion. The explosion occurred on March 26,
1912. There was a pile of coke outside and south of the
building which had been covered with snow. The snow
was melting and the water ran into the building. Some of
the witnesses testified that a small ditch had been dug to
conduct the water toward and near to the cupola, evidently
for the purpose of bringing it in contact with the slag which
was drawn from the cupola, to enable it to be broken up
more easily. The witnesses for defendant in error testified
that this water extended up to the two south legs which
supported the cupola. It is undisputed that the floor around
the cupola is lower than its concrete base. Only one witness
on the part of defendant in error testified that the water
extended under any portion of the cupola. In illustrating
what he meant by the water extending from leg to leg of
the cupola he drew a line on an exhibit showing the location
and shape of the base of the cupola which cut off a segment
of the base and showed, according to his testimony, that the
water extended under a portion of the south rim of the
cupola. The other witnesses who testified on the part of
defendant in error as to the location of the water testified
that it was in a semicircular form and extended around
from leg to leg of the cupola outside the concrete base.
The defendant in error offered no proof whatever that the
explosion was caused by the hot metal coming in contact
with the water or that molten metal coming in contact with
water would cause an explosion. This was one of the ma-
terial allegations in the declaration, and it devolved upon
the defendant in error to prove it before he was entitled
to recover. The theory of plaintiff in error is that when
the contents of the cupola dropped upon the foundation,
gas from the unconsumed coke, which had collected in the
wind-box, was suddenly forced out by the pressure of the
descending mass and ascended into the space or pocket
formed by the partition and the steel beams and plates of

the cupola room ceiling and was there ignited by the flames from the burning coke and exploded in the top of the cupola room.

The only evidence in the record as to the effect of pouring molten metal in water was that produced by the testimony of witnesses for plaintiff in error. That tended to show that when molten metal is poured into water which is sufficient to cover the metal no disturbance follows, but if the metal covers the water it causes an accumulation of steam and the metal is spattered or thrown about in small particles. There was no evidence that this explosion was in any way connected with or resulted from dumping the hot iron into or upon water. Proof was made tending to show that the dumping of the cupola was always attended with danger, and that it was customary to order all workmen to leave the building when that was done except the cupola-tender, who knocked the props out from under the doors. It also tended to show that defendant in error was not warned in sufficient time for him to leave the building; and that when the explosion occurred he was thrown violently out of the building through a door and under a freight car which was standing on a track about fifteen feet from the building. While the act of plaintiff in error in dumping the cupola without giving defendant in error time to get out of the zone of danger may have constituted such negligence as would have entitled him to recover for the injury he sustained, that is not the negligence declared on in the declaration. The plaintiff in a personal injury case cannot allege specific negligence of one kind and recover upon proof of another kind. (*Chicago and Alton Railway Co.* v. *Bell,* 209 Ill. 25.) There being no proof whatever that the explosion was caused by the negligent dumping of the hot metal upon water, as alleged in the declaration, the court erred in not giving the peremptory instruction asked on the part of plaintiff in error.

This renders it unnecessary to notice many of the other points raised. One of these, however, may become important upon another trial. The plaintiff in error asked the court to instruct the jury as follows:

"The court instructs you that in this case the burden is upon the plaintiff to prove by a preponderance or greater weight of the evidence, not only that his alleged injuries now exist or have existed, but that they are the result of the explosion *of the molten metal from the furnace coming in contact with water which was on the ground under the furnace;* and in determining whether or not the plaintiff has sustained the alleged injuries, and whether such injuries resulted from the explosion in question, and *whether or not the explosion was caused by the molten metal coming in contact with the water,* you should consider all the evidence in the case and all the facts and circumstances proved on the trial, and if, after such consideration, you determine that such alleged injuries do not and have not existed, or that they did not result from the explosion in question, *or that said explosion did not result from the dumping of the molten metal in water which is alleged to have been on the ground under the furnace,* then the plaintiff cannot recover in this case."

The court modified this instruction by striking out the words shown in italics and gave the instruction as modified. The court erred in so modifying the instruction. As it was incumbent upon defendant in error to prove the negligence alleged in the declaration, plaintiff in error was entitled to this instruction. By modifying it in this manner the jury were, in effect, told that defendant in error was entitled to recover in case there was an explosion from any cause, on account of which he suffered injury.

For the errors indicated the judgments of the Appellate and superior courts are reversed and the cause is remanded to the superior court.     *Reversed and remanded.*